[No. 15126.    Department Two. — August 11, 1893.]

In the Matter of the Guardianship of HELEN B. BLINN, an Incompetent Person. W. J. ADAMS, Guardian, Respondent, *v.* H. W. BRADLEY, Jr., Appellant.

Estates of Deceased Persons — Insanity of Administratrix — Adjudication — Appointment of Successor — Citation — Notice of Hearing. — Where the administratrix of an estate appointed prior to the adoption of the codes was adjudged insane and sent to the insane asylum, and was not restored to sanity before an application was made to revoke her letters and to appoint a new administrator, the probate court had jurisdiction under the general laws of the state to make such revocation and to appoint a new administrator, without the issuance of any citation to her, or any other notice of the hearing than was given to her as an heir by posting the usual notice, she having had her day in court in the adjudication of her insanity, which was sufficient proof of the fact.

Appeal from an order of the Superior Court of Alameda County confirming a probate sale of real estate.

The facts are stated in the opinion.

*Jarboe & Jarboe, H. W. Bradley, Jr.,* and *Robert H. Countryman,* for Appellant.

*Selden S. & George T. Wright,* for Respondent.

Haynes, C. — The court below granted an order for the sale of the interest of Helen B. Blinn, an insane person, in certain real estate. Appellant Bradley made a bid in writing therefor of the sum of twenty-four thousand seven hundred and fifty dollars, "subject to confirmation by said court, provided that the title to said lot is perfect and merchantable, and is free from all liens and encumbrances of every kind and character. . . . . If the title is not perfect as of record, or said property is encumbered, and the encumbrances are not removed after five days' notice thereof, then said deposit is to be immediately returned. The undersigned to have five days after the receipt of complete abstract of title of the said lot in which to examine the same."

Respondent accepted the bid with the said conditions attached, reported the sale to the court, and asked for confirmation. Appellant filed objections to the confirmation, which objections were submitted to the court upon an agreed statement of facts,

whereupon the court made an order confirming the sale to appellant, and directing a conveyance, from which order this appeal is taken. The facts appear in the bill of exceptions, and somewhat condensed are as follows: —

In 1872, Samuel P. Blinn died intestate, leaving said Helen B. Blinn, his widow, and three minor children. The widow was duly appointed administratrix, was qualified and letters of administration were regularly issued to her. Shortly thereafter, and before she had made any progress in the settlement of the estate, she was adjudged insane by the county court of the city and county of San Francisco, and sent to the state asylum for the insane. Thereupon William H. Patterson was appointed her guardian, but the records in that proceeding do not show that he ever qualified as such. George B. Bradford was duly appointed and qualified as the guardian of the children. Shortly after Mrs. Blinn had been adjudged insane, Patterson, as her guardian, and Bradford as the guardian of the children, petitioned the probate court for the appointment of Bradford as administrator of the estate of Samuel P. Blinn, alleging the usual jurisdictional facts, and that Mrs. Blinn had been adjudged insane by the county court and was then confined in the state insane asylum; that Patterson had been duly appointed and qualified as her guardian, and praying that a day be fixed for the hearing, and that the clerk give notice thereof by posting. Upon this petition Bradford was appointed, thereafter qualified, gave notice to creditors, and administered the estate.

The order for his appointment recited that it was upon the petition of Bradford, as guardian of the children, but did not refer to Patterson as the guardian of Mrs. Blinn; that the applicant, Bradford, appeared in person and by his attorney, W. H. Patterson; found that the clerk had posted notices as required by law; that Mrs. Blinn was insane and had been so adjudged, and revoked her appointment. The record is silent as to whether any citation or notice of these proceedings was served upon Mrs. Blinn, and aside from the averment in the petition that Patterson had been appointed and qualified as her guardian, is also silent as to the fact that she had a guardian.

The insanity of Mrs. Blinn was at that time of short duration;

After she was restored to sanity, she applied to the court for an allowance for her support, recognized Bradford as the administrator, consented to the allowance of his commissions, and participated in the final settlement and distribution of the estate. Her present incompetency occurred subsequently.

Upon these facts appellant contends that the probate court had no jurisdiction to revoke the letters granted to Mrs. Blinn; that she had never been suspended or removed from her office as administratrix; that the appointment of Bradford is void; that the estate of Samuel P. Blinn has never been administered, and that hence the title to the property is not such as he is bound to accept under the conditions of his bid.

It is conceded by respondent that the record does not affirmatively show either that Mr. Patterson ever qualified as the guardian of Mrs. Blinn, or that any citation was issued or served upon her to show cause why her letters of administration should not be revoked; but respondent contends that even if the proceedings for the appointment of Mr. Bradford as administrator were defective, that by the acquiescence of Mrs. Blinn in the appointment after she was restored to sanity, and her participation in the final settlement and distribution of the estate, she is now estopped from questioning the validity thereof, the proceeding for the sale of the real estate here in question being a proceeding by her through her guardian and for her benefit.

We think that the court had jurisdiction, and that the appointment of Mr. Bradford was regular.

The proceedings resulting in the appointment of Mr. Bradford were had before the Code of Civil Procedure was enacted. Sections 5794 and 5795 of Hittell's General Laws (corresponding to sections 1425 and 1426 of the Code of Civil Procedure) are as follows:—

"Sec. 5794. In case any one of several executors or administrators, to whom letters shall have been granted, shall die, become lunatic, be convicted of an infamous offense, or otherwise become incapable of executing the trust, *or* in case the letters testamentary, or of administration, shall be *revoked, or annulled, according to law,* with respect to any one executor or administrator, the remaining executor or administrator shall proceed and complete the execution of the will or administration."

"Sec. 5795. If all such executors or administrators shall die, or become incapable, *or* the authority of all of them shall be *revoked*, according to law, the probate court shall issue letters of administration with the will annexed, or otherwise, to the widow or next of kin, or others, in the same manner as is directed in relation to original letters of administration. The administrator so appointed shall give bond in the like penalty, with like sureties and conditions as hereinafter required of administrators, and shall have the like power and authority."

These sections, it will be seen, do not prescribe the grounds upon which the authority of an administrator may be *revoked*, nor the mode in which the revocation may be accomplished. The twelfth chapter of the act, sections 5979 to 5984 (2 Hittell's General Laws), does that. Section 5979 is as follows:—

" Whenever the probate judge has reason to believe from his own knowledge, or from credible information, that any executor or administrator has wasted, embezzled, or mismanaged, or is about to waste or embezzle the property of the estate committed to his charge, or has committed, or is about to commit a fraud upon the estate, or has been incompetent to act, or has permanently removed from the state, or who has wrongfully neglected the estate, or has long neglected to perform any act as such executor or administrator, it shall be his duty, by an order entered upon the minutes of the court, to suspend the powers of such executor, or administrator, until the matter can be investigated."

The sections following provide for the appointment of a special administrator during such suspension, if deemed necessary, and require the suspended administrator to be cited to appear and show cause why his letters should not be revoked.

When considered together these provisions do not seem difficult of construction. The power or jurisdiction of the court to appoint a new administrator may be exercised upon the happening of the death, insanity or conviction of an infamous offense by the former administrator, *or* upon the revocation of his power and authority by the court.

The insanity of Mrs. Blinn at the time of Bradford's appointment is not questioned, but only the proceedings resulting in

his appointment. In case of the death, insanity, or conviction of the former administrator, such death, insanity, or conviction must be judicially ascertained by the probate court before a new appointment can be made, but such fact may properly be ascertained by the court in a proceeding under a petition for the appointment of a new administrator. In case of the death of the former administrator the fact is properly presented to the court in a petition for the appointment of a new administrator, and upon the hearing the fact may be established by witnesses. In case of the conviction of the former administrator of an infamous offense, the fact may be presented in the same manner, and proved upon the hearing by the production of the record of his conviction. No citation to the convict is necessary, as it is the *fact* of the conviction when shown to the court by proper allegation and evidence which authorizes the court to make the new appointment. The convict is not a necessary party to the proceeding. He has had his day in court and is conclusively bound by the record. No one would contend for a moment that it is necessary in the probate proceeding for the appointment of a new administrator to again charge him with the offense and try him upon that charge before a jury and have a verdict of guilty in the probate court.. So in the case of insanity. Not only the insane person, but all who deal with him, are bound by the record of the court of competent jurisdiction adjudging him insane, unless they can show that after the adjudication and before the transaction in question he had been restored to sanity. No such restoration is claimed in this case. Hence the proper mode of presenting the fact of Mrs. Blinn's insanity was pursued. It was properly alleged in a petition for the appointment of Mr. Bradford as administrator, and the record of the county court adjudging her insane was competent and sufficient proof of the fact, and that was the only fact to be ascertained to authorize the court to proceed to the appointment of a new administrator. Upon the question of her sanity Mrs. Blinn had had her day in court. She was bound by that adjudication. If she had not been adjudged insane prior to the proceeding for Mr. Bradford's appointment, it would have been necessary to have brought her regularly before the court as a party to the proceeding, since she must have been presumed to

be sane and entitled to a hearing upon that question. Appellant contends, however, that the statute required that she should be cited; that the word "incapable" used in sections 5794 and 5795, and the word "incompetent" used in section 5979 are synonymous; that under the latter section the person "incompetent to act" must be cited to show cause before his authority can be revoked.

The legislature has classified death, insanity, and conviction of an infamous offense under the designation "incapable," and other matters affecting the integrity or qualification for the discharge of the duties of an administrator as "incompetency." The embezzler, the thief, the man who hesitates at no fraudulent scheme to despoil an estate, or who is so careless and indifferent as to habitually and grossly neglect his duties may have capacity to properly discharge all the duties of an administrator, but the man who is dead, or insane, or *civiliter mortuus* is "incapable". Whether the word "incompetent" was wisely chosen or not, the context leaves no room to doubt the sense in which it was used, and that it was used to designate a different class from those characterized as "incapable." Nor is this view inconsistent with *Shroeder* v. *Superior Court*, 70 Cal. 344, cited by appellant. There it was held that the provision of the Code of Civil Procedure that by the marriage of an administratrix "her authority is extinguished," is the equivalent of "she ceases to be competent." In such case the mental and physical capacity of the administratrix is not affected by the marriage, but the statute extinguishes her authority. It is true the court there held that she "may be proceeded against for suspension and removal under section 1436 of the Code of Civil Procedure, and the sections immediately following"; but the closing sentence of the opinion shows that the proceeding "for suspension and removal" is referred to as a convenient and orderly one for ascertaining the *fact* of the marriage where doubt existed. If we clearly distinguish betweeen the direct legal effect of the death, insanity, marriage, or conviction of crime upon the *authority* of the administrator, and the finding of these facts as necessary to the exercise of the jurisdiction of the court to appoint a successor, all difficulty is removed.

Appellant also cites *Estate of Moore*, 68 Cal. 281. In that

case Thomas W. Moore, the administrator, was adjudged insane by a competent court and sent to an asylum. About a year latter he was discharged from the asylum and under a direct proceeding under section 1766 of the Code of Civil Procedure, he was found and adjudged to be of sound mind. Afterwards the widow of intestate filed her petition in the probate court, alleging, among other things, that Thomas W. Moore had been adjudged insane, and since that time no order had been made appointing any one as administrator, and asking that she be appointed. It was held that an entire or absolute vacancy was not created when respondent, Thomas W. Moore, was sent to the asylum; that he became incapable of executing the trust for the time being, and if during that time she had applied for letters they would doubtless have been granted; but having been restored to sanity, and recognized by the court and others as such administrator, the application came too late.

It is not necessary to determine in the case at bar whether insanity creates an absolute vacancy, or if it does, whether it occurs prior to the judicial ascertainment of the fact by the probate court, for it is not questioned here that Mrs. Blinn was insane at the time Mr. Bradford was appointed; while the case of Moore expresses the opinion that if Mrs. Moore's application had been made while the insanity of the former administrator continued, that letters would have been granted to her. There is, therefore, no conflict between that case and the opinions we have expressed in this.

The probate court having found that Mrs. Blinn was insane and had been so adjudged by the county court, had jurisdiction to appoint Mr. Bradford, and no citation to Mrs. Blinn was necessary.

She was entitled as heir to notice of the hearing, but that was given by posting the usual notice.

The conclusion we have reached makes it unnecessary to consider the effect of her subsequent acquiescence in the appointment and proceedings of Mr. Bradford as administrator, and also renders immaterial the question whether Mr. Patterson in fact qualified as her guardian.

The judgment or order confirming said sale to appellant from which this appeal is taken should be affirmed.

SEARLS, C., and BELCHER, C., concurred,

For the reasons given in the foregoing opinion, the judgment or order confirming said sale to appellant is hereby affirmed.

McFARLAND, J., FITZGERALD, J., DE HAVEN, J.